Curia, per

Richardson, J.
The finding of the jury has settled, satisfactorily, the charges set forth in the indictment. That the defendants did cheat and defraud D. L. Levy, by meáns of a false token, is verified. But this question is left open for this court to decide. Was the cheat and fraud effected by the means of a^false token, that is of itself of a public character, so as to put at hazard and peril the public interest or safety in the general trade of the State ? For such a purpose, the false token must have the ostensible appearance of a public instrument, calculated to deceive. The common illustrations of the meaning of the common law in such cases, are found in adjudged cases of cheating by means of false measures, as the bushel, gallon or yard; 2 East P. C. 820. A false seal affixed to cloth, in order to enhance the price ; Russel on C. 1369 ; Chitty C. L. 757. Cheating by false dice ; Cro. Jac. 497. Russ. 1369, is referred to the same general principle. So false certificates or vouchers by an officer; 4 East R. 191 — 2 ; or false copies or certificates of judicial records.
In a word, the cheat or fraud must be effected “by some> deceitful and illegal practise or token which affects, or' may affect, the public Russ. 1380. Under this principle, and by the lights of such adjudged cases, the court must decide the present case.. The same cheat, effected by means of the promissory note of an individual, would not be sufficient, as the court decided in the case of the State vs. D. Middleton, Dudley R. 275.
Is a Bank note to be placed on the same footing ? By no means. Bank notes are the usual representatives of gold and silver coin. Ninety-nine out of an hundred debts, are paid by the tender and acceptance of such bills. They are almost universally used as the practical measure in the purchase and sale of property, as well as in the payment *248 of debts. Every State in the Union, perhaps, and certainly South Carolina, has made Bank Bills a good tender of payment, unless expressly objected to, and coin required in their stead.
To cheat, then, by the mere semblance of a Bank Bill, is calculated to affect, and would greatly affect, the general interest and safety of trade. More so, assuredly, than by cheating by false dice or counterfeit public seals on cloths or inspected tobacco, which would be clear cases.
If the false token in question purported to be the bill of a chartered bank of this State, I could perceive no room for two opinions. For it would then be the false token and semblance of a public an’d legalized measure of debts to the State, and to individuals.
But if the supposed bill be of another State or Territory, can that make any difference in the public character of the false token 1
Such bills are of common use in trade and payment— the interest and convenience of commerce are found in rendering all such bills a part of the common currency, and equal in the measure and for the purpose of exchanges. We have moreover made the forgery of such foreign bills punishable in common with that of our own bank bills. This enactment would seem to recognize them as of the same public measure and character ; as well as in common use in the State.
Arguing, therefore, from reasonable analogy, the conclusion of my understanding is — that the false token in question is to be placed on the footing of the like semblance of bank bills of South Carolina; and that such would affect the public interest, and constitute cheating by false tokens at common law.
This view of the case decides the strict judicial question. Much might be said upon the want of vigilance in the clerk of Mr. Levy, in accepting so imperfect a semblance of a bank bill. But when we consider how many unlearned men and women, children and servants, are in the practice of receiving bank bills at sight, upon the evidence of a figure or common pictorial device, which they have bqfore remarked upon the faces of such bills, we *249 should be slow to say, after a jury have decided the cheat, that it required a simpleton to have accepted such a bill, in order to grant a new trial.
The motion for a new trial, therefore, as well as that in arrest of the judgment, is dismissed.
EvaNs, Wardlaw and Frost, JJ. concurred.